186 La. 716

## JAMES v. WILLIAMS et al.
### No. 33981.

Supreme Court of Louisiana.
March 1, 1937.

W. T. Holloway, of Jonesboro, for appellant.

Elder & Elder and C. A. Barnett, all of Ruston, for appellee.

ROGERS, Justice.

The plaintiff, J. E. James, is the owner of a brick building in the town of Jonesboro. On August 1, 1932, he leased the building for use as a filling station to Walker McDonald. The lease was for three years, with the privilege of renewal for three additional years, beginning on August 1, 1932, and ending on August 1, 1935. The contract was in writing and was duly recorded in the parish records.

About two months before the expiration of McDonald's lease, James leased the filling station to L. G. Williams. This lease, which is in writing, is dated June 1, 1935, but it was actually executed on May 26, 1935. The contract stipulates that it shall cover five years, beginning June 1, 1935, and ending June 1, 1940, with the privilege of renewal for five additional years. It was recorded in the parish records on July 29, 1935.

This suit is for the cancellation of the lease from James to Williams. Plaintiff's demand is predicated on an alleged oral agreement entered into between him and Williams on May 29, 1935, to cancel the lease contract as evidenced by a letter dictated by defendant and signed by plaintiff in the presence of witnesses, which agreement defendant allegedly later repudiated, refusing to cancel the lease and erase it from the records. Plaintiff prays for judgment recognizing the alleged oral agreement to cancel the lease and ordering the lease canceled and erased from the public records.

The Magnolia Petroleum Company, whose products were being handled in the filling station, was made a party defendant, on the allegation that it was fraudulently persuading and inducing Williams to refuse to cancel and erase the lease.

Both defendants filed exceptions of no cause of action, the exception of the Magnolia Petroleum Company being sustained and the exception of Williams being overruled. The defendant Williams then answered, denying that plaintiff had agreed to cancel the lease, in the manner alleged and averring that defendant, on May 29, 1935, advised plaintiff of his desire to cancel the lease, but that plaintiff refused to agree to its cancellation, and, hence, the contract was still in effect.

Each party prayed for judgment against the other for damages he alleges he sustained as the result of their dispute.

After trial on the merits, the court below rendered judgment for defendant, rejecting plaintiff's demands. The judgment, in effect, recognized defendant's lease, but denied his claim for damages. Plaintiff appealed.

The testimony of the parties is in irreconcilable conflict, but the trial judge found that the weight of the evidence supported defendant's version of the several transactions between them.

Plaintiff testified that on May 29, 1935, he and the defendant agreed to cancel the lease. There were no witnesses to the alleged agreement. However, on the day stated the parties joined in the preparation of a document reading as follows:

"Port Arthur, Texas,
"May 29, 1935.
"To Whom It May Concern:

"I, J. E. James, am the owner of the service station in Jonesboro, Louisiana, which station is now being operated by J. Walker McDonald, and that the said station is now leased to Walker McDonald on a month to month basis and that no change in the present arrangement is being contemplated in so far as the lease is concerned.

"No lease exists between the said J. E. James and L. G. Williams, Agent for the Magnolia Petroleum Company, at the present time.

"Mr. James states further that he is the owner of a service station in Ruston, Louisiana now being operated by a Mr. E. P. Cole, and that no lease exists between Mr. James and L. G. Williams of the Magnolia Petroleum Company nor the Magnolia Petroleum Company itself."

"J. E. James."
"Witnesses:
"Gertrude M. Kingray,
"W. O. Weathers."

At the time the lease in question was entered into, an understanding existed among the major oil companies that none of them would lease a "going" filling station. The operator of the oil station involved here was handling the products of the Standard Oil Company. L. G. Williams, the defendant, was a bulk agent for the Magnolia Petroleum Company. When that company learned that Williams had leased plaintiff's oil station at Jonesboro, it promptly disapproved of his act and notified him to secure a cancellation of the contract or his services would be dispensed with. In this situation, Williams conceived the idea of inducing plaintiff to cancel the lease to him and to execute a new lease to William A. Phillips, one of his employees. In company with Phillips, defendant went to Lake Charles, La., where they met the plaintiff. Williams informed plaintiff of his company's objections to his holding the lease and requested plaintiff to cancel the lease to him and execute a new lease, which he had prepared, to Phillips. Plaintiff refused to do this.

Defendant testified that plaintiff told him he would go to Jonesboro with him and close down, or "kill" the station, and while it was closed would give him a new lease, in order to evade the understanding of the oil companies. Plaintiff denied making the statement attributed to him, but defendant's testimony is corroborated by Phillips, and plaintiff did return to Jonesboro with the defendant. However, it was mutually decided that the plan suggested by plaintiff would not meet the objection of defendant's employer, and it was abandoned. On this trip, plaintiff induced his tenant McDonald to handle the products of the Magnolia Petroleum Company instead of the products of the Standard Oil Company, the change becoming effective about June 1, 1935. Under his lease, defendant agreed to pay plaintiff $10 a month more than McDonald was paying, beginning June 1, 1935. And defendant also agreed to pay McDonald $10 a month for making the change to his company's products. McDonald was not informed of the lease executed by plaintiff and defendant, and did not learn of the contract until after August 1, 1935, when his renewal option expired.

Notwithstanding the change effected by McDonald from Standard products to Magnolia products, the Magnolia Company persisted in its objection to defendant's holding the lease. Defendant then went to Port Arthur, Tex., to see plaintiff about canceling the lease. He was accompanied on the trip by Oren Alexander. Defendant really desired to cancel the lease, and offered to do so. But, according to his testimony, which was corroborated by Alexander, plaintiff refused to cancel the contract, and told plaintiff that he would fix up something that would get him by his company.

The parties then got in plaintiff's car and went to a nearby office, where they dictated to a stenographer the document hereinabove quoted. When the document was typed by the stenographer, plaintiff signed it in the presence of the subscrib-

ing witnesses and delivered it to the defendant. Plaintiff, in the presence of Alexander, told defendant, in substance, that if the instrument proved to be unsatisfactory, they would fix up something else.

Defendant exhibited the document to his company, which also became apprised of plaintiff's negotiations with McDonald for the renewal at a higher rent of the latter's lease and his change to Standard products. In these circumstances, the Magnolia Company withdrew its objections and permitted defendant to hold the lease.

If it had been the intention of the parties that the document of May 29, 1935, was to evidence a cancellation of their lease contract, the simple and obvious thing for them to do was to state their object so that it could not be misunderstood. But the document is evasive in its nature and ambiguous in its terms. It consists largely of half-truths. The statement that the station was then under lease to McDonald and was being operated by him was true. The statement that no change was then being contemplated was untrue, although it possessed a semblance of truth, since McDonald's lease still had two months to run and no change could be made until the expiration of that period, and since McDonald had signed a contract agreeing to handle Magnolia products. The statement that no lease then existed between James and Williams or between James and the Magnolia Petroleum Company was untrue in fact although true in the sense that the lease by James to Williams was not to become effective until June 1, 1935, which was three days later.

The trial judge found that the clear purpose of the document, considered in connection with the testimony and the conduct of the parties, was to deceive the Magnolia Petroleum Company as to the existence of the lease. We think that the finding is correct. The language of the letter is in keeping with its purpose.

The case impresses us, as it did the trial judge, as one in which the plaintiff for a higher rental leased the property to defendant from under McDonald and then for an even higher rental is desirous of leasing the property to McDonald from under the defendant.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.